UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THOMAS SOOK, an individual, | ) |
| | ) |
| Plaintiff, | )   CASE NO. |
| | ) |
| v. | ) |
| | ) |
| THE NIELSEN COMPANY (US), LLC, | ) |
| a Delaware limited liability company | ) |
| d/b/a "Nielsen Media Research," | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR STATUTORY DAMAGES AND
INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 et seq.,
THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)
– JURY DEMAND –**

1. This is an action for damages under 47 U.S.C. § 227 et seq., The Telephone Consumer Protection Act ("TCPA"). Defendant, The Nielsen Company (US), LLC d/b/a Nielsen Media Research ("Nielsen") has bombarded Plaintiff with thousands of unwanted and unlawful text messages, despite repeated requests to stop. To date, Nielsen has sent Plaintiff at least 2,500 unsolicited text messages, and continues to send Plaintiff text messages at the rate of approximately 3 per day.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of over this matter under 28 U.S.C. § 1331 and 47 U.S.C. § 227. The TCPA is a federal statute.

3. Venue in this District is proper because, by directing the text messages at issue into this District, a substantial part of the events or omissions giving rise to the

claim has therefore occurred here.

## PARTIES

4. Plaintiff, THOMAS SOOK ("Mr. Sook" or "Plaintiff"), is a natural person and a citizen of the State of Florida, residing in Pinellas County, Florida.

5. Defendant, THE NIELSEN COMPANY (US), LLC ("Nielsen" or "Defendant"), is a Delaware limited liability company whose principal address is 85 Broad Street, New York, NY 10004, and whose Registered Agent for service of process in the State of Florida is National Corporate Research, Ltd., Inc., 150 Office Plaza Drive, Tallahassee, FL 32301.

6. Nielsen does business in the State of Florida under the name "Nielsen Media Research," from offices located at 501 Brooker Creek Boulevard, Oldsmar, FL 34677.

## A BRIEF OVERVIEW OF TEXT MESSAGING AND THE TCPA

7. "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).

8. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

2

9. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

10. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. See FCC Declaratory Ruling, 23 FCC Rcd at 565 (¶ 10).

13. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

14. A text message does not need to be advertisement to violate the TCPA. The

3

TCPA does not regulate content. Instead, it regulates context—the time, place, or manner of communication. *De Los Santos v. Millward Brown, Inc.*, 13-cv-80670-KAM (June 30, 2014).

15. The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

16. Many companies have websites which promote recurring "alert" programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

17. In interpreting the "definition of automatic telephone dialing system," the FCC noted the basic function of such equipment was — "the *capacity* to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092. In doing so, it interpreted "automatic telephone dialing system" to include equipment that utilizes lists or databases of known, nonrandom telephone numbers. *See generally, Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011).

18. The FCC defines "spam" as unwanted messages to email accounts and texts to mobile phones and other mobile devices. http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email.

19. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent

4

receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed February 4, 2015).

## FACTUAL ALLEGATIONS

20. Nielsen is believed to be the world's leading marketing and media information company. Its product offerings include the measuring and analyzing of how people interact with digital and traditional media.

21. From June 1, 2009 to March 25, 2011 Plaintiff worked for Nielsen Media Research in Oldsmar, Florida. Plaintiff was employed on an "on-call" basis, meaning that he was required to be available for work at all times of day or night.

22. During his period of employment, Plaintiff was responsible for responding to technical issues including errors encountered in retrieving consumer data.

23. As an "on-call" employee, Plaintiff received notification of issues that required his attention via a text message sent to him, briefly addressing the problem or task. Plaintiff was only one of many such "on-call" employees who received work instructions in this manner.

24. To deliver the aforementioned text messages, Nielsen requires equipment capable of delivering mass text messages to multiple individuals. To accomplish this, Nielsen, as evidenced by sender ID, "telalert@nielsen.com" accompanying every text message received by Plaintiff, Nielsen utilizes MIR3's TelAlert notification services to deliver its text message notifications.

25. MIR3 claims to be the premier provider of Intelligent Notification and

response software for business operations, including crisis management, IT service management, corporate communications, customer relations, supply chain management, event management, or any area that needs reliable two-way notification for groups from one to many thousands. http://www.mir3.com/company.

26. The company claims its notification system is capable of sending more than a million messages in an hour. Email, SMS, pager and Blackberry messages go faster, at roughly 300,000 in a quarter hour. In that same 15 minutes, the system can make 12,000 phone calls (assuming a 30-second call). http://www.mir3.com/wp-content/uploads/2013/03/Speedy-Mass-Notification-SDBJ.pdf

27. TelAlert's automated notification service places text message calls without any human intervention; the messages are automatically generated whenever an event (like an escalated help desk ticket or a hardware failure) requires action. The computerized system is designed to allow the recipients of the text messages to quickly resolve problems and reduce the risk of missing critical issues. See, http://www.mir3.com/telalert/.[1]

28. Plaintiff, when employed by Nielsen, received such text messages in the ordinary course of his employment.

---

[1] "TelAlert, which is used by more than 4,000 organizations around the world, including many of the Fortune 500, allows customers to send automated alerts without the need for human intervention or the risk of human error. If an issue is detected, the two-way notification platform will notify IT staff based on configurable schedules and escalation rules to ensure that problems are acknowledged and resolved as quickly as possible. TelAlert will automatically send alerts to a variety of communication devices including email, mobile phones, Short Message Service (SMS), pagers, landlines and more. TelAlert 6e includes additional capabilities such as easier management of groups, schedules and reports using a modular, distributed architecture and an intuitive Web-browser GUI." Source: http://www.mir3.com/mir3-extends-data-management-expertise-to-it-market-with-telalert-data-loader/ (Last Accessed Feb. 4, 2015.)

29. When Plaintiff left the Defendant's employ, the text messages stopped completely.

30. A few months later, for no apparent reason, Plaintiff again began receiving TelAlert notifications from Defendant at the rate of 3-4 messages per day.

31. As far back as 2012, and most recently in August 2014, Plaintiff has contacted Defendant in an attempt to stop the text messages. On each occasion, Plaintiff was unsuccessful, due either to Defendant's negligent disregard for the problem or intentional refusal to take the necessary measures to halt the delivery of unwanted text messages to Plaintiff.

32. As of the filing of this complaint, Plaintiff continues to receive 3-4 text messages per day from Defendant.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

33. Plaintiff incorporates the foregoing paragraphs.

34. Defendant sent unwanted text messages to Plaintiff automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called from a database of numbers.

35. The excessive calls (*i.e.*, text messages sent post-revocation) were made without the prior express consent of the parties.

36. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) Statutory damages at $500 dollars per call for negligent violations of the TCPA;

(b) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(c) Such further relief as this Court may deem appropriate.

## COUNT II

### WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT

37. Plaintiff incorporates the foregoing paragraphs.

38. Defendant knowingly or willfully sent unwanted text messages to Plaintiff automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called from a database of numbers.

39. The excessive calls (*i.e.*, text messages sent post-revocation) were made without the Plaintiff's prior express consent.

40. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(b) An injunction requiring Defendant to cease all communications in violation of the TCPA;

(c) Such further relief as this Court may deem appropriate.

### JURY DEMAND

41. Plaintiff demands trial by jury.

Dated: February 5, 2015

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: (954) 589-0588
Fax: (954) 337-0666
Florida Bar No. 0597651
scott@scottdowens.com

9