**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| THOMAS SOOK, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO.** 8:15-cv-264-EAK-MAP |
| | ) | |
| v. | ) | |
| | ) | |
| THE NIELSEN COMPANY (US), LLC, | ) | |
| a Delaware limited liability company | ) | |
| d/b/a "Nielsen Media Research," | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING RULING BY THE FEDERAL COMMUNICATIONS COMMISSION**

Plaintiff, through undersigned counsel, files this Response and Memorandum of Law in opposition to Defendant The Nielsen Company (US), LLC's[1] Motion to Stay Proceedings Pending Ruling by the Federal Communications Commission, [ECF No. 24]. Defendant petitions this Honorable Court to stay proceedings until the Federal Communications Commission[2] issues a declaratory ruling addressing the issues raised *In the Matter of Rubio's Restaurant, Inc., Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (filed August 11, 2014).[3] Defendant's Motion should be denied because the FCC has proposed new rules, set for a vote on June 18, 2015, which will "crack down on robocalls, robotexts, and telemarketing calls." *See* "Another Win for Consumers" blog post by FCC Chairman Tom Wheeler, attached as **Exhibit A**. The specifics of the FCC's proposed rules make it clear that the agency intends to address The

[1] Hereinafter "Defendant" or "Nielsen"
[2] Hereinafter "FCC"
[3] Hereinafter "The Petition"

Petition in a manner that will not impact this case. *See* "Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones" attached as **Exhibit B**. Thus this case should be allowed to progress without interruption. In further opposition to a stay of proceedings Plaintiff states as follows:

## I. BACKGROUND

Plaintiff worked for Nielsen as a Senior Software Developer from June 1, 2009 to March 25, 2011.[4] As an aspect of Plaintiff's employment, he received text message alerts regarding problems with Nielsen's hardware and software. While he was employed, Plaintiff acquiesced to this appropriation of his personal cellular telephone for Nielsen's own business purposes; however, when Plaintiff amicably terminated his relationship with Nielsen he reasonably expected that the text messages would cease.[5] However, Nielsen either failed to remove Plaintiff from its messaging system, or, as Defendant asserts, its system "experienced an unexplained computer glitch" [ECF No. 24; p. 2], which caused Plaintiff to continue to receive text alerts. Regardless of the reason, Nielsen sent text messages to Plaintiff's cellular telephone using an automated system without his consent.

In October of 2012, Plaintiff began receiving an unacceptably high volume of Nielsen's text alerts. On January 15, 2013, after approximately three months of frequent texts, Plaintiff contacted Defendant by telephone and requested that his number be removed from Nielsen's

---

[4] Although Plaintiff's last day of work was March 25, 2011, he remained on Nielsen's payroll until April 1, 2011 when his saved vacation days were exhausted.

[5] Consent under the TCPA is limited by the circumstances under which it is given. *See GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling*, Declaratory Ruling, 29 FCC Rcd 3442, 2014 WL 1266074 (¶11) (2014). When Plaintiff terminated his employment with Nielsen, he also terminated his consent to receive text messages about tasks he was no longer required to perform. *See* FCC Brief as Amicus Curiae, *Nigro v. Mercantile Adjustment Bureau, LLC*, Case No. 13-1362, United States Court of Appeals for the Second Circuit, DE 112 at 4 (June 30, 2014).

system. Nielsen failed to comply with this request and in fact steadily increased the frequency with which it sent text alerts to Plaintiff. In August 2014 Plaintiff again contacted Nielsen and demanded that they stop sending text alerts to his cellular phone. Plaintiff also pursued the matter through email, which resulted in a chain of correspondence that was circulated to seven Nielsen employees, but which did not result in any reduction in the number of text alerts Plaintiff received. Frustrated by Defendant's recalcitrance but unaware of legal avenues for halting the barrage of texts, Plaintiff took no further action until he saw a commercial which mentioned the Telephone Consumer Protection Act ( hereinafter the "TCPA"). After doing some additional research Plaintiff contacted the undersigned law firm on January 22, 2015.

This action was filed on February 9, 2015, seeking statutory damages for violations of the TCPA, specifically 47 U.S.C. § 227(b)(1)(a)(iii), and injunctive relief. Defendant was served on February 11, 2015 at 8:00 am. *See* [ECF No. 5-1]. Plaintiff's lawsuit succeeded where his prior communications had failed – Defendant sent the final text alerts, at least for the time being, to Plaintiff's cellular telephone on the day it was served. The celerity with which Defendant removed Plaintiff from its text alert system when confronted with a lawsuit strongly indicates that it would have been a simple matter for Defendant to stop texting Plaintiff when the matter was first brought to its attention. The fact that Defendant was unwilling to stop harassing Plaintiff prior to the instigation of this suit speaks to its callous disregard for the law and Plaintiff's privacy rights.

## II. STANDARD OF REVIEW

Under the primary jurisdiction doctrine, courts may, under appropriate circumstances, stay proceedings "pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *Davel Comm'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086 (9th Cir.2006), courts have found the doctrine applies in a limited set of circumstances and is used "if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark*, 523 F.3d at 1114.

Additionally, courts have been reluctant to grant a stay where it is of indefinite duration, or where the FCC is not obliged to rule on precisely the issues at bar. Generally, courts require a showing that an administrative agency's ruling is imminent, and will necessarily address the issues pending before the court. *Alvarado v. Bay Area Credit Serv., LLC*, No. 14-CV-02549-SC, 2015 WL 224950, at *2 (N.D. Cal. Jan. 16, 2015) ("Also important is likelihood that the FCC will rule on the issue soon. If it is probably going to be a long time until the FCC rules, then the prejudice to Ms. Alvarado is likely to be correspondingly greater and the delay caused will be correspondingly longer."); *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2014 WL 4905629, at *4 (N.D. Cal. Sept. 29, 2014) ("The problem with the pending submissions is that it is entirely unclear whether the FCC will issue a ruling pertinent to this case, since it is not obliged to resolve those four issues"); *Nat'l Commc'ns Ass'n v. Am. Tel. and Tel. Co.,* 46 F.3d 220, 225 (2d Cir.1995) (noting in declining to apply primary jurisdiction doctrine that "agency decision making often takes a long time") (internal quotations omitted); *Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 1458179, at *5 (N.D. Cal. Apr. 26, 2012) ("[t]he court is reluctant to stay this proceeding pending a determination by the FCC since there is no indication that the FCC has taken up or will take up the issues.")

Finally, Defendant provides string citations to cases which were stayed as a result of petitions pending before the FCC. However, many courts, including courts in this district have

refused to grant a stay which shows a lack of consensus as to whether TCPA litigation presents the appropriate circumstances for the primary jurisdiction doctrine. *See, e.g., Fenescey v. Diversified Consultants, Inc.*, 2014 WL 2526571 (M.D. Pa. June 4, 2014); *Morse v. Allied Interstate, LLC*, 2014 WL 2916480 (M.D. Pa. June 26, 2014); *Hartley-Culp v. Credit Mgmt. Co.*, 2014 WL 4630852 (M.D. Pa. Sept. 15, 2014); *Swope v. Credit Mgmt., LP*, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013); *Prater v. Medicredit Inc.*, 2014 WL 4652942 (E.D. Mo. Sept. 18, 2014); *Meyer v. Receivables Performance Mgmt., LLC*, 2014 WL 1976664 (W.D. Wash. May 14, 2014); *Murray v. Diversified Consultants, Inc.*, 2014 WL 2574042 (M.D. Fla. June 9, 2014); *Fail v. Diversified Consultants, Inc.*, 2014 WL 2574532 (M.D. Fla. June 9, 2014); *Ayers v. Verizon Commc'ns, Inc.*, 2014 WL 2574543 (M.D. Fla. June 9, 2014); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) *reconsideration denied,* 2013 WL 3872171 (N.D. Ill. July 29, 2013); *Jordan v. Nationstar Mortgage LLC*, 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014); *Shehan v. Wells Fargo Bank N.A.*, 2014 WL 5529365 (N.D. Ala. Nov. 3, 2014); *Beiler v. GC Servs. L.P.*, 2014 WL 5531169 (M.D.N.C. Nov. 3, 2014); *Holcombe v. Credit Prot. Ass'n, LP*, 2014 WL 4252277 (M.D. Ga. Aug. 28, 2014); *Knapp-Ellis v. Stellar Recovery, Inc.*, 2014 WL 5023632 (W.D. Wash. Oct. 8, 2014).

## III. ARGUMENT

### A. Introduction

Defendant bases the instant motion on a petition for a declaratory ruling which, in relevant part, requests FCC guidance on the following topics: (1) whether the TCPA applies to intra-company messaging systems; (2) whether there is a bad-faith defense to the TCPA; and (3) whether the TCPA imposes liability for informational calls that reach someone other than the intended recipient because their telephone number has been reassigned. First, The Petition is

factually distinguishable from the situation before the Court, and thus there is a high likelihood that the FCC will address the issues raised in The Petition in such a way that the case at bar is not impacted. Additionally, the only aspect of The Petition which does square with the issues at play here - whether the TCPA applies to intra-company messaging systems, is the subject of the FCC's new TCPA rules set for a vote on June 18, 2015. Specifically, the FCC will vote on a new definition of an Automatic Telephone Dialing System which would clearly encompass the technology at issue here. Also, the FCC Chairman has proposed only: "***Very* Limited and Specific Exceptions for Urgent Circumstances**" [*See* **Exhibit** B at 1] (emphasis in original). These specific exceptions do not include intra-company alerts such as those received by Plaintiff, and thus it seems overwhelmingly likely that The Petition will be rejected to the extent it seeks an exemption for the types of alerts at issue in this case. Should the FCC fail to accept the Chairman's proposed rules, then the requested stay will be for indefinite duration causing prejudice to Plaintiff, and there is no indication that the FCC would even take up the issues raised by The Petition.

**B. This Case is Distinguishable From the Facts Presented by The Petition**

Factually, The Petition and the case at bar share few similarities. Petitioner Rubio's Restaurant, Inc. faces a suit where the plaintiff received the allegedly violative text messages because he was the new subscriber to a number which had been previously assigned to a Rubio's employee. Here Nielsen continued to send text alerts to a former employee, and thus the reassigned number issue presented by The Petition is not present. Also, the plaintiff in the matter of Rubio's Restaurant expressly stated that no remedial action was necessary to stop incoming text messages as he had taken steps to block the messages already. *See* [ECF No. 24-1; p. 10]. Here, Defendant acknowledges that Plaintiff requested that Nielsen stop sending him text

messages on multiple occasions, but construes Plaintiff's efforts as "minimal" and insinuates that he acted in bad faith because he did not take unspecified additional actions to stop the harassment. This turns the concept of bad faith on its head. Defendant has on at least three occasions disregarded Plaintiff's clear indication that he did not consent to receive Nielsen alert text messages: first when he terminated his employment with Defendant – an affirmative act which clearly revokes consent to receive work related text messages, again when Plaintiff contacted Nielsen by phone to expressly revoked his consent, and a third time when Plaintiff again contacted Nielsen, both by phone and email, to revoke his consent. Defendant disingenuously glosses over the enormous gulf between the conduct described in The Petition and what actually took place here. As such, in the unlikely event that the FCC rules on The Petition separate from the proposed new rules in **Exhibit B** and institutes a bad faith exemption, Plaintiff's claim would still not be impacted since he has not acted in bad faith.

### C. Chairman Wheeler's Proposed Rule Change Signals that the FCC Intends to Deny the Relevant Portions of The Petition

Chairman Wheeler's proposed new TCPA rules address two dozen petitions seeking clarification of the TCPA. *See* **Exhibit B** at 1. Although a list of the specific petitions the proposed rules will address does not appear to be available, The Petition on which Defendant bases this motion is almost certainly one of them given the topics the proposed rules address. The Petition seeks clarification on two main issues: whether the TCPA applies to "telephone numbers that have been reassigned without the caller's knowledge" and whether the TCPA applies "to intra-company messaging systems which are not aimed at consumers and never intended to reach the public." [ECF No. 24-1, pp. 3-4].[6] The Chairman's proposal addresses both

[6] Notably, while Defendant reads The Petition to request the FCC add a bad-faith defense to the TCPA, it in fact does not affirmatively request this relief, but merely suggests that the FCC

of these topics, and thus it is highly likely that The Petition is among the twenty-four (24) which will be dealt with should the FCC adopt the proposal on June 18, 2015.

First, the proposed new TCPA rules will clarify that "[i]f a phone number has been reassigned, callers must top calling the number after one call." **Exhibit B** at 1. Thus the first subject of The Petition, reassigned numbers, is squarely addressed by the Chairman's proposed rules. It would make little sense for the FCC to address the central contention of The Petition but still keep it pending on its docket.

Next, the proposed new TCPA rules clarify the definition of an automatic telephone dialing system, or autodialer, under the TCPA. The proposed definition, "**any technology** with the capacity to dial random or sequential numbers" (Id.) (emphasis added) encompasses intra-company alert systems so long as they have the capacity to deal random or sequential numbers. Use of the term "any technology" means that the FCC does not intend to create a technology specific exemption to the TCPA as The Petition requests. Additionally, the proposed new TCPA rules mention specific content based exceptions which would not apply to the alert calls described by The Petition. The proposed rules provide for an exception to the TCPA for: "[f]ree calls or texts to, for example, alert consumers to a possible fraud on their bank accounts or remind them of important medication refills". Clearly the proposed exceptions concern calls with utility to consumers. Intra-company alert systems offer consumers no utility whatsoever, as they only reach consumers when a company is negligent or, as here, shows a willful disregard for a consumer's rights. In light of the chosen definition and the exceptions to the TCPA, it appears that both of the main issues in The Petition will be addressed by the FCC on June 18, 2015.

---

"should consider" adding this defense. [ECF No. 24-1, p. 10]. Regardless, there is no evidence of bad faith on the part of the Plaintiff and thus it is not relevant to the instant Motion.

Finally, in the unlikely event that the proposed new TCPA rules fail to be adopted by the full Commission, then it is anyone's guess as to when the FCC will address The Petition. The case law in this and other districts is clear that an indefinite stay is not in anyone's interest. *See Ayers v. Verizon Communications, Inc.*, 2014 WL 2574543 (M.D. Fla. June 9, 2014) (refusing to stay TCPA action pursuant to primary jurisdiction argument and holding in part "the interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC, rather than postponing this case for an indefinite amount of time based on the possibility that the FCC *may* decide to reconsider its past positions. Further, any reconsideration by the FCC regarding its interpretation of these provisions would likely apply prospectively."); *Fail v. Diversified Consultants, Inc.*, 2014 WL 2574532 (M.D. Fla. June 9, 2014) (same); *Trainor v. Citibank, N.A.*, 2014 WL 2574527 (D.Minn. June 9, 2014) ("It may be that the FCC is poised to overturn its prior decisions, but given that this issue has been pending before the FCC for more than four years, when that new decision will issue is anyone's guess. An indefinite stay is not in any party's interest.") (internal citation omitted).

**D. A Stay Will Cause Prejudice to Plaintiff**

Defendant's argument that this Court should use its inherent authority to stay this case rests on a premise that is faulty by its own admission. Defendant argues that Plaintiff will not suffer prejudice, in part, because "Defendant has ceased any text messages to Plaintiff, so there is no continuing harm." [ECF No. 24; p. 12]. However, Defendant also asserts that Plaintiff received the texts at issue in this case because of an "unpreventable and undetectable computer error." [Id. at 2]. If Nielsen was truly unable to prevent the text alerts Plaintiff received, then it stands to reason that this unpredictable system may well resume texting Plaintiff at any time. Plaintiff has requested that this Court enjoin further communications in violation of the TCPA.

[ECF No. 1; p. 9]. An injunction provides Plaintiff with a direct avenue to enlist the powers of this Court in restraining further wrongdoing. Should this action be stayed, especially for the indefinite duration Defendant proposes, Plaintiff would be limited in his ability to halt subsequent illegal conduct. It took a lawsuit to stop the text messages, and Defendant contends that there is no way to prevent the error it claims caused the texts to start. Plaintiff is prejudiced by every unnecessary day this Court waits before issuing an injunction.

## IV. CONCLUSION

WHEREFORE Plaintiff respectfully requests that this Court deny Defendant's Motion, [ECF No. 24].

Dated: June 2, 2015.

Respectfully submitted,

*/s/ Scott D. Owens*
Scott D. Owens, Esq.
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.